JOURNAL ENTRY and OPINION
{¶ 1} Plaintiff-appellant Mark A. Hibbitt appeals the trial court's granting summary judgment for defendant-appellee, First United Equities, Inc. For the reasons below, the decision of the trial court is affirmed.
{¶ 2} On October 6, 1997, First United made a mortgage loan to Hibbitt in the amount of $36,300. The loan, which was secured by a first lien on Hibbitt's home, was made in order for Hibbitt to refinance obligations under a pre-existing mortgage loan.
{¶ 3} First United charged Hibbitt $2,178 in discount points on the loan, approximately 16.5% of the original principal amount of the loan.
{¶ 4} Hibbitt commenced this action by filing a complaint against First Union alleging that it violated R.C. 1343.011(B) by charging discount points in excess of 2% of the original principal amount of the loan.
{¶ 5} The trial court granted First United's motion for summary judgment because it determined that R.C. 1343.011(B)'s discount point limitation was preempted by the Depository Institutions Deregulation and Monetary Control Act of 1980 (DIDMCA). The court found that "Ohio has never opted out or overridden the preemption on the discount point limitation in either of the two manners provided for in the act."
{¶ 6} Hibbitt raises the following assignments of error on appeal:
 I. THE TRIAL COURT ERRED IN RULING THAT THE OHIO LEGISLATURE'S MARCH 10, 1988 REENACTMENT OF R.C. 1343.011(B)'S DISCOUNT POINT LIMITATION WAS NOT EFFECTIVE TO OPT OUT OF THE DISCOUNT POINT LIMITATION PREEMPTION BY THE DEPOSITORY INSTITUTIONS DEREGULATION AND MONETARY CONTROL ACT OF 1980.
 II. THE TRIAL COURT ERRED IN FAILING TO GRANT THE PLAINTIFF/APPELLANT'S MOTION FOR SUMMARY JUDGMENT.
{¶ 7} Hibbitt entered into the mortgage agreement with First United in 1997. At that time, R.C. 1343.011(B) read as follows:
 (B) Except residential mortgage loans described in division (B)(3) of section 1343.01 of the Revised Code, no residential mortgage lender shall receive either directly or indirectly from a seller or buyer of real estate any discount points in excess of two per cent of the original principal amount of the residential mortgage.
{¶ 8} Reading R.C. 1343.011(B) alone would support Hibbitt's contention that First United violated this statute in charging him discount points in an amount greater than two per cent of the original principal amount of the residential mortgage in question. However, this statute must be read in conjunction with section 501(b) of the DIDMCA,94 Stat. 161, 12 U.S.C.A. 1735f-7a.
{¶ 9} In the DIDMCA, the United States Congress directly addressed state laws limiting mortgage interest, discount points, finance charges and other charges. Title 12 U.S.C. § 1735f-7a, in pertinent part, provides that:
 (a) * * * (1) The provisions of the constitution or the laws of any State expressly limiting the rate or amount of interest, discount points, finance charges, or other charges, which may be charged, taken, received, or reserved shall not apply to any loan, mortgage, credit sale, or advance which is —
 (A) secured by a first lien on residential real property, * * *;
(B) made after March 31, 1980; and
 (C) described in section 527(b) of the National Housing Act (12 U.S.C. § 1735f-5(b)), * * *. (Emphasis added.)
{¶ 10} The type of loan described in 12 U.S.C. § 1735f-5(b), as referenced in 12 U.S.C. § 1735f-7a(a)(1)(C), is a "federally related mortgage loan." 12 U.S.C. § 1735f-5(b)(2)(D) describes federally related mortgage loans as:
 any loan which * * * is made in whole or in part by any "creditor", as defined in section 103(f) of the Consumer Credit Protection Act of 1968 ( 15 U.S.C. § 1602(f)), who makes or invests in residential real estate loans aggregating more than $1,000,000 per year.
{¶ 11} Title 12 U.S.C. § 1735f-7a further provides that:
 (b) * * * (1) Except as provided in paragraphs (2) and (3), the provisions of subsection (a)(1) shall apply to any loan, mortgage, credit sale, or advance made in any State on or after April 1, 1980.
{¶ 12} R.C. 1343.011(B) was enacted in 1975, at which time the two per cent limit on discount point charges was created. Accordingly, as both parties agree, the DIDMCA preempted the discount point limitation set forth in R.C. 1343.011(B).
{¶ 13} In the instant case, Hibbitt secured a mortgage in 1997 with a first lien on his residence. He obtained the mortgage from First United, a creditor who makes or invests in residential real estate loans aggregating more than $1,000,000 per year. Therefore, Title12 U.S.C. § 1735f-7a(a)(1) applies, and First United was not limited to charging less than two per cent of the amount of the original loan.
{¶ 14} However, in addition to the sections set forth above, Congress provided the states with an opportunity to opt out of the provisions set forth in 12 U.S.C. § 1735f-7a(a)(1). The opt-out provision at issue is set forth in Title 12 U.S.C. § 1735f-7a(b)(4), which reads as follows:
 (4) At any time after the date of enactment of this Act [enacted March 31, 1980], any State may adopt a provision of law placing limitations on discount points or such other charges on any loan, mortgage, credit sale, or advance described in subsection (a)(1).
{¶ 15} Hibbitt argues that Ohio employed the opt-out provision set forth in 12 U.S.C. § 1735f-7a(b)(4). Hibbitt maintains that Ohio "adopt[ed] a provision of law placing limitations on discount points" when it amended R.C. 1343.011 in 1988.
{¶ 16} R.C. 1343.011 was amended by H.B. 708, which became effective on April 19, 1988. The following changes were made to R.C.1343.011 by H.B. 708: a comma was moved in R.C. 1343.011(A)(1), the phrase shall include was changed to "includes" in R.C. 1343.011(A)(2), the phrase "building and loan association" was deleted from R.C. 1343.011(A)(3), and in R.C. 1343.011(C) the phrase "the effective date of this section" was replaced with "November 4, 1975."
{¶ 17} R.C. 1343.011(B) remained intact. It appears in its entirety, in regular typeface, in H.B. 708.
{¶ 18} Hibbitt argues that by including the language of R.C.1343.011(B) in H.B. 708, the General Assembly intended to adopt a 2% limitation on discount points so that this limitation would apply to loans as described in the DIDMCA.
{¶ 19} First United argues that the changes made to R.C. 1343.011
were technical and non-substantive, and that the General Assembly's act of restating R.C. 1343.011(B), while making nonsubstantive changes to other sections of R.C. 1343.011, did not constitute an adoption of a discount point limitation for loans described in the DIDMCA.
{¶ 20} For H.B. 708 to have readopted R.C. 1343.011(B), the General Assembly must have intended the act to have that effect. Stevensv. Ackman (2001), 91 Ohio St.3d 182; 743 N.E.2d 901. The intent of the General Assembly may be determined by considering the way the statute at issue was amended. See Id.; see also, State ex rel. Durr v. Spiegel
(1914), 91 Ohio St. 13, 22, 109 N.E. 523, 525; In re Hesse (1915),93 Ohio St. 230, 235, 112 N.E. 511, 512.
{¶ 21} A review of H.B. 708 reveals that the General Assembly intended to make minor amendments to R.C. 1343.011(A) and (C), and that it did not intend to take any action whatsoever with regard to R.C.1343.011(B).
{¶ 22} In 1988, when R.C. 1343.011 was amended by H.B. 708, R.C.101.52[1] was in effect. It read as follows:
 * * * Bills shall be printed in the exact language in which they were passed, under the supervision of the clerk of the house in which they originated. New matter shall be indicated by capitalization and old matter omitted by striking through such matter. Prior capitalization in a Revised Code section shall be indicated by italicized type. * * *
{¶ 23} The devices set forth in former R.C. 101.52 provided the General Assembly with a mechanism for showing changes within the context of the bill or act. Thus, confusion was alleviated when determining the intended changes being made by the General Assembly. See Stevens at 193, citing, Baldwin's Ohio Revised Code Annotated, editor's comment to Section 15, Article II of the Ohio Constitution (interpreting R.C.101.53,[2] formerly 101.52, see 1998 H.B. No. 649, 147 Ohio Laws, Part III, 5043).
{¶ 24} The printing format used by the General Assembly in H.B. 708 indicates no intent to reenact R.C. 1343.011(B). R.C. 1343.011(B) appears in the printed act in regular typeface, without any capitalization to indicate new material pursuant to former R.C. 101.52. See Stevens.
{¶ 25} Thus, R.C. 1343.011(B), as contained in the original 1343.011, was not reenacted in 1988 but is regarded as continuous and undisturbed by the amendatory act. See Stevens, quoting, In re Hesse,93 Ohio St. at 234, 112 N.E. at 512, citing, In re Allen (1915),91 Ohio St. 315, 320-321, 110 N.E. 535, 537; see also, R.C. 1.54. Accordingly, H.B. 708 did not reenact R.C. 1343.011(B), and it remained preempted by Title 12 U.S.C. § 1735f-7a(a)(1).
{¶ 26} The conclusion that the General Assembly did not intend to opt out of Title 12 U.S.C. § 1735f-7a(a)(1) by H.B. 708 is further supported by the language found in the current version of R.C. 1343.011(B) (eff. 3-18-99), which provides:
 * * * no residential mortgage lender shall receive either directly or indirectly from a seller or buyer of real estate any discount points in excess of two per cent of the original principal amount of the residential mortgage. This division is not a limitation on discount points or other charges for purposes of section 501(b)(4) of the "Depository Institutions Deregulation and Monetary Control Act of 1980," 94 Stat. 161, 12 U.S.C.A. 1735f-7a. (Emphasis added.)
{¶ 27} Section 4 of H.B. 522 states that "the amendment by this act of section 1343.011 of the Revised Code is intended as a clarification of existing law and not as a substantive change in the law." Our conclusion above comports with the view set forth in the current version of R.C. 1343.011(B).
{¶ 28} Accordingly, we hold that the General Assembly did not intend to exercise the opt-out provision set forth in Title12 U.S.C. § 1735f-7a(b)(4). Thus, the limitation on the cost of discount points as set forth in R.C. 1343.011(B) does not apply to the loan at issue. Therefore, the decision of the trial court granting summary judgment for First United is affirmed.
It is ordered that appellee recover of appellant their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES J. SWEENEY, P.J. and DIANE KARPINSKI, J. CONCUR
[1] Eff. 3-5-87.
[2] The version of R.C. 101.53 (eff. 3-9-99) included the phrase, "New matter shall be indicated by capitalization and old matter omitted by striking through such matter. Prior capitalization in a Revised Code section shall be indicated by italicized type."
The current version of R.C. 101.53 (eff. 5-9-2000) reads:
 Bills shall be printed in the exact language in which they were passed, under the supervision of the clerk of the house in which they originated. The legislative service commission, by rule adopted under section 111.15 of the Revised Code, shall direct how new matter shall be indicated and old matter omitted.